1
2
3
4
5
6
7

8        **IN THE UNITED STATES DISTRICT COURT**

9        **FOR THE DISTRICT OF ARIZONA**

10   United States of America,                )
                                              )        CV-04-876-PHX-SRB (JCG)/
11            Plaintiff,                       )             CR-01-0077-PHX-SRB
                                              )
12   vs.                                       )        **REPORT AND**
                                              )        **RECOMMENDATION**
13   Jose Luis Lopez,                          )
     aka, Jose Guadalupe Lopez-Ayon, et al.,  )
14                                             )
             Movant.                           )
15   _____ )

16        Movant, Jose Luis Lopez, pro se, an inmate confined in the USP-Atwater, in Atwater,

17   California filed a Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal

18   Custody pursuant to 28 U.S.C. § 2255 in the United States District Court for the District of

19   Arizona. Pursuant to the Rules of Practice of this Court, this matter was referred to a

20   Magistrate Judge for Report and Recommendation. For the following reasons, the Magistrate

21   Judge recommends that the District Court deny the Motion and dismiss the action.

22        **FACTUAL AND PROCEDURAL BACKGROUND**

23        Movant Lopez was charged by criminal complaint on November 17, 2000, and

24   subsequently by indictment, on January 25, 2001, with various offenses, including drug

25   trafficking offenses.  (Doc. Nos. 1 & 25.)  A co-defendant accepted a plea agreement in

26   return for a plea of guilty; Lopez elected to go to trial.

27        On May 3, 2001, a jury convicted Movant of one count of conspiracy to possess with

28   intent to distribute cocaine base (508.9g heroin/109.3g cocaine), one count of possession

with intent to distribute heroin (28g), one count of possession with intent to distribute heroin (480g), and one count of possession with intent to distribute cocaine base (109.3g).  (Doc. No. 72.)  Movant was acquitted by the jury of one count of brandishing a firearm, 380 caliber, semi-automatic handgun in connection with a drug deal.  The government dismissed one count of illegal entry prior to trial.  (Doc. No. 107; October 29, 2001 Sentencing Transcript at 16.)

On October 29, 2001, Movant was sentenced to serve a term of 360 months on counts 1 and 4 to run concurrently with time served, followed by a term of supervised release for a term of ten years on counts 1 and 4; six years on counts 2 and 8; and eight years on count 3 to run concurrently.  The Bureau of Prisons' estimated release date is 2027.

On November 1, 2001, Movant filed a Notice of Appeal.  (Doc. No. 108.)  On December 18, 2002, the Ninth Circuit Court of Appeals entered a Memorandum Decision upholding Movant's conviction and sentence.  (Answer, Ex. B.)  In that decision, the court found that:  the government complied with the procedural and notice requirements of 21 U.S.C. § 851; the trial court properly enhanced Movant's sentence under § 841(b); there was sufficient evidence to establish that Movant was qualified for career offender status; and there was no error if Movant had not been advised at the time of a plea that he could be sentenced as a career criminal.  Finally, the Ninth Circuit found that the sentencing court had not misapplied the downward departure guideline range and that, in fact, Movant had not requested a downward departure at sentencing.  (Answer, Ex. B at 6.)  On January 9, 2003, the Ninth Circuit Court of Appeals returned the mandate affirming the decision of the district court.  (Doc. No. 125.)

On February 24, 2004, Movant filed a Motion for Extension of Time to File a 28 U.S.C. § 2255 Motion to Vacate, Set Aside or Correct Sentence.  (Doc. No. 129, 130.)  On March 16, 2004, that motion was denied without prejudice.  (Doc. No. 132.)  On April 27, 2004, Movant filed a Motion to Vacate, Set Aside or Correct Sentence By a Person in Federal Custody with an indication that an explanatory Memorandum of Law would follow.  (Doc. No. 133.)  On April 27, 2004, a Motion for Leave to Proceed as Next Friend with a

1    supporting memorandum was filed.  (Doc. Nos. 135, 136.)  The Court denied the Motion to

2    Proceed as a Next Friend.  (Doc. No. 141, 146.)  On August 19, 2004, the government filed

3    a brief conceding that the Movant's Section 2255 motion was timely filed and moving for

4    additional time to file a substantive Answer.

5           On September 2, 2004, Movant's Memorandum of Law in Support of Motion to

6    Vacate, Set Aside or Correct Sentence and Traverse to Government's Reply was filed.[1]

7    (Doc. No. 151.)  Movant raised the following grounds for relief in the Motion:  (1)

8    ineffective assistance of counsel at trial; (2) ineffective assistance of counsel on appeal; (3)

9    the standard used to determine his competency fell below constitutional guidelines; (4) the

10   Court improperly applied the sentencing guidelines when it failed to consider certain factors

11   justifying downward departure; (5) an intervening change in the law required a jury to

12   consider the sentence faced when the statutory sentencing range is being enhanced; (6) the

13   indictment was constructively amended by a variance between the jury instructions and the

14   conspiracy charge; and (7) the jury made no finding as to the validity of the prior conviction

15   which enhanced Movant's sentence.  (Doc. No. 151.)  On January 14, 2005, the government

16   filed an Answer.  (Doc. No. 158.)

17          On February 15, 2005, the Court ordered the government to file a brief addressing the

18   application of United States v. Booker, 543 U.S. 220 (2005) to Movant's sentence.  (Doc. No.

19   161.)  On March 1, 2005, the government filed a Brief Regarding the Application of Booker

20   to Movant's Sentence.  (Doc. No. 162.)

21          On February 1, 2005, Movant filed a motion requesting a thirty day extension of time

22

23          [1]  The Court has repeatedly denied Movant's request to be represented by a friend of court.  Nonetheless,
     it appears that all of Movant's submissions were written by someone else.  Movant's Memorandum of Law
24   refers to Movant in the third person, and makes unsupported statements such as: "Lopez has expressed that
     he can hear and see 'spirits' and that he follows the advice of such ethereal beings."  (Mem. at 7.)  The
25   Memorandum indicates that Movant obtained full assistance from a non-professional helper.  (Mem. at 7.)
     The Memorandum states: "Lopez could not assist his defense counsel at trial and he cannot do it during this
26   request for collateral review:  he lacks competency."  (Mem. at 11.)  On May 25, 2006, this Court conducted
     a status hearing.  Movant was transported to Tucson to appear at the hearing in person.  At the hearing, the
27   Movant indicated that he personally signed all of the pleadings that were filed in the case and that although
     someone else wrote the legal documents, Movant adopted the documents as his own and agrees with all of
28   the statements contained in the documents.

                                                    3

to respond to the government's response.  (Doc. No. 159.)  By Order dated February 3, 2006, Movant was ordered to file his reply to the government's response on or before February 27, 2006.  (Doc. No. 164.)  Movant filed his reply on February 27, 2006.  (Doc. No. 167.)

**DISCUSSION**

Section 2255 authorizes the district court to do any one of four things:  (1) "vacate and set the judgment aside and . . . discharge the prisoner," (2) "resentence," (3) "grant a new trial," or (4) "correct the sentence."  If the court vacates and sets aside the judgment of conviction, then, of course, the prisoner must be discharged, or granted a new trial.  If the sentence, as distinguished from the conviction, is illegal, then it may be corrected.  But a judge cannot, without vacating the conviction because of a legal defect found therein, change or modify, after Rule 35's sixty day period has expired, a sentence that is itself proper, legal and lawful as a sentence.  Richards v. United States, 212 F.2d 453, 454 (D. C. Cir. 1954).  Section 2255 "was not meant to broaden the scope of attack upon a judgment and sentence permissible under habeas corpus but rather to confine the relief . . . to the court where sentence was imposed."  Crow v. United States, 186 F.2d 704, 706 (9th Cir. 1950).  Section 2255 motions that allege violations of federal law are generally cognizable only if they involve a "fundamental defect which results in a complete miscarriage of justice."  Davis v. United States, 417 U.S. 333, 346 (1974).  Further, Section 2255 cannot take the place of an original appeal.  In other words, Section 2255 may not be invoked to relitigate questions which were or should have been raised on a direct appeal from the judgment of conviction.  Murchu v. United States, 926 F.2d 50, 55 (1st Cir. 1991); Dodd v. United States, 321 F.2d 240, 242 (9th Cir. 1963); Black v. United States, 269 F.2d 38, 41-42 (9th Cir. 1959), cert.denied, 361 U.S. 938 (1960).

**A.    Ineffective Assistance of Counsel During Trial**

Movant asserts that he received ineffective assistance of trial counsel because:  (1) he was incompetent to stand trial and counsel did not request a competency hearing; (2) trial counsel did not make arguments concerning 21 U.S.C. § 851 at trial; and (3) trial counsel did not stop Movant from testifying at trial.  (Movant's Memorandum of Law, hereinafter

4

"Mem," Doc. No. 151 at 13.)

The Sixth Amendment guarantees not only the right to counsel, but the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). The burden of proof on Movant to show ineffectiveness is two-pronged. First, Movant must show that counsel's performance was deficient in that counsel made errors so serious that counsel was not functioning as "counsel." Id. at 687. Second, Movant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable. Unless both showings are made, it cannot be said that the resulting conviction is unreliable. Id.

The proper standard for attorney performance is that of reasonably effective assistance. Id. In demonstrating a deficient performance, the defendant must show that the representation fell below an objective standard of reasonableness. Id. at 688. Judicial scrutiny of counsel's performance must be highly deferential because there is a "strong presumption that counsel's performance falls within the 'wide range of professional assistance.'" Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689).

To prove prejudice, Petitioner must show that there is a reasonable probability that, but for counsel's errors and omissions, the result of the proceeding would have been different. Strickland, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

**1.    Incompetency to stand trial**

Movant alleges trial counsel should have requested a competency hearing because Movant falls easily into states of depression and hears, sees and follows the advice of spirits. Movant alleges that his trial counsel knew Movant was suffering from "delusion psychosis" as evidenced by the attorney's hourly log which reveals "knowledge or, at least, reasonable suspicion about Lopez' shortcomings." (Mem. at 15.) Movant further alleges that his dismissal of any consideration of a plea agreement was primarily based in psychosis. (Id.) Movant asserts that the Court cannot be certain, without the benefit of an evidentiary hearing,

5

1   that Lopez was competent during trial and appellate proceedings.  (Mem. at 7.)  Lopez
2   believes that an evidentiary hearing will show that he has a fixed delusional belief that he
3   was being "picked on" by the police because of resentment of his status as a "well-adjusted
4   illegal immigrant" and that as a result of his psychosis he failed to provide his attorney with
5   any useful information.  (Mem. at 15.)

6          Petitioner has failed to satisfy either prong of the Strictland test.  A habeas corpus
7   petitioner is entitled to an evidentiary hearing or habeas relief when "he has alleged facts [in
8   his petition] which, if proven, would entitle him to relief. . . . for the petition is expected to
9   state facts that point to a real possibility of constitutional error."  O'Bremski v. Maass, 915
10  F.2d 418, 420 (9th Cir. 1990) (quotations omitted), cert. denied, 498 U.S. 1096 (1991).  The
11  Motion to Set Aside, supporting legal memorandum, and the record in this case do not
12  "conclusively show that the prisoner is entitled to relief" with regard to Movant's claim.  See
13  United States v. Leonti, 326 F.3d 1111, 1116 (9th Cir. 2003).  Movant's allegation of
14  ineffective assistance of trial counsel is conclusory and without evidentiary support in the
15  record or otherwise.  Movant has failed to produce any evidence such as statements or
16  affidavits from witnesses or counsel which would substantiate the allegations in his petition,
17  suggest that he was delusional at trial,  that he could not assist his defense counsel during
18  trial or in this request for collateral review, or that his counsel should have questioned
19  Movant's competence at trial.  There is no indication that Movant's trial counsel knew or
20  suspected or even currently believes that Movant was incompetent at the time of trial.
21  Counsel's log entry relied upon by Movant states that "in spite of the government's viable
22  threats of harsh prosecution, Lopez told him that he was a faithful man and that he couldn't
23  be convicted of something he had not done."  (Mem. at 14.)  This log entry does not suggest
24  that defense counsel erroneously characterized his delusions regarding angels as religious
25  faithfulness as Movant contends.

26         Similarly, Movant's alleged "self-defeating behavior," such as his failure to accept a
27  plea agreement and his testifying at trial, does not constitute evidence of mental
28  incompetency.  A defendant's decision not to admit wrongdoing, to forego a plea agreement

6

1   and to exercise his right to trial, and to testify at trial, absent more, is not evidence of mental

2   illness.  These are basic Constitutional rights of defendants in the criminal justice system and

3   defendants routinely exercise their Constitutional right to reject a plea agreement and proceed

4   to trial.  Trial counsel cannot prevent a client from testifying at trial, even over advice to the

5   contrary, Rock v. Arkansas, 483 U.S. 44 (1987); Gill v. Ayers, 342 F.3d 911 (9th Cir. 2003),

6   and trial counsel's failure to "stop" Movant from testifying at trial does not constitute

7   ineffective assistance of trial.[2]   Notably, the trial record reflects that Movant testified in a

8   lucid manner.  (Trial Tr., Vol. 3 at 312.)

9          Movant cites case law in which retrospective competency hearings were ordered

10  despite long delays between trial and the request for relief.  In those cases, however, the

11  movant provided defense declarations or other evidence describing the defendant's behavior

12  at the time of the initial trial and those declarations or evidence suggested a basis for

13  questioning the defendant's competency.  As noted above, however, Movant provides no

14  evidence and fails to point to any facts which would suggest that his counsel was ineffective

15  for failing to request that his competency be evaluated.[3]

16          **2.    Failure to Make Certain Arguments**

17          Movant's arguments regarding the application of 21 U.S.C. § 851[4] were rejected by

18

19          [2]   In his Answer to Government's Opposition, Movant claims that his testimony was compelled, that he
20  did not choose to testify, his attorney decided for him to give up his Fifth Amendment self-incrimination
    right.  (Movant's Answer to Opp. at 7.)  Movant's statement is completely inconsistent with his prior
21  arguments and, like his prior averments, is unsupported by any evidence.

22          [3]   It is noteworthy that the trial court could have sua sponte ordered a competency hearing if the judge
    observed behavior warranting such.  The fact that the court did not order such a hearing suggests that the
23  judge also did not observe behavior which would indicate a concern about Movant's mental competency.

24          [4]   § 851. Proceedings to establish prior convictions

25  (a) Information filed by United States Attorney

26          (1) No person who stands convicted of an offense under this part shall be sentenced to increased
    punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea
27  of guilty, the United States attorney files an information with the court (and serves a copy of such
    information on the person or counsel for the person) stating in writing the previous convictions to
28  be relied upon.  Upon a showing by the United States attorney that facts regarding prior convictions
    could not with due diligence be obtained prior to trial or before entry of a plea of guilty, the court

7

the Ninth Circuit and may not be relitigated at this juncture.  <u>Dodd</u>, 321 F.2d at 242.  The Ninth Circuit ruled that Section 851 applies when the government seeks to obtain the increased statutory penalties whereas the career offender provisions of the Guidelines do not entail increasing the statutory penalties for the defendant's crime.  (Memorandum Opinion No. 01-10701 at 1; Answer, Ex. B.) The Ninth Circuit further found that, even if the notice requirements of section 851(b) were not complied with, the district court did not err because the greatest offense statutory maximum un-enhanced sentence was life imprisonment, which corresponds to an offense level 37, and which was the level used by the district court in determining Movant's guideline range.  (<u>Id.</u>)  The Court also upheld the district court's reliance on the presentence report which indicated that Movant had two prior state felony convictions for controlled substance offenses.  (<u>Id.</u>)

## B.   Ineffective Assistance of Counsel During Appeal

Movant complains that he received ineffective assistance of counsel during his direct criminal appeal.  He asserts that appellate counsel had no contact with him whatsoever and, therefore, developed the appeal without having previously developed a working relationship with him and by relying on the government's open file discovery without conducting other

may postpone the trial or the taking of the plea of guilty for a reasonable period for the purpose of obtaining such facts.  Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence.

(2) An information may not be filed under this section if the increased punishment which may be imposed is imprisonment for a term in excess of three years unless the person either waived or was afforded prosecution by indictment for the offense for which such increased punishment may be imposed.

* * *

(d) Imposition of sentence

(1) If the person files no response to the information, or if the court determines, after hearing, that the person is subject to increased punishment by reason of prior convictions, the court shall proceed to impose sentence upon him as provided by this part.

(2) If the court determines that the person has not been convicted as alleged in the information, that a conviction alleged in the information is invalid, or that the person is otherwise not subject to an increased sentence as a matter of law, the court shall, at the request of the United States attorney, postpone sentence to allow an appeal from that determination.  If no such request is made, the court shall impose sentence as provided by this part.  The person may appeal from an order postponing sentence as if sentence had been pronounced and a final judgment of conviction entered.

8

investigations. (Mem. at 5, 21.) According to Movant, at the end of 2003, he wrote a letter to his appellate attorney in preparation of his 2255 request. His attorney responded by discouraging Movant from seeking post-conviction relief and by describing Movant as lucky for getting a 30-year term of imprisonment. (Mem. at 22.) Movant asserts that the appellate attorney's representation was "half-hearted." The government argues that Movant failed to substantiate any allegations of ineffective assistance by appellate counsel.

A review of the appellate record reveals that there was no substandard performance by appellate counsel. Movant's allegations are conclusory at best. For example, although Movant alleges that appellate counsel could have made an argument regarding the government's failure to meet its burden of proof or to address the faulty jury instruction defining "conspiracy" and "reasonable doubt" (Mem. at 22), Movant fails to indicate any basis to support either of these arguments. In fact, in his Answer to Government's Opposition to his Motion to Vacate, Set Aside or Correct Sentence, Movant indicates he does not intend to disclose the nature of exculpatory evidence showing he did not have a leadership role in the conspiracy unless the Court orders him to do so or until counsel is appointed to represent him at an evidentiary hearing. (Movant's Answer to Opp. at 8.)

In sum, trial and appellate counsels' performance in all respects was reasonable and no evidentiary hearing is required. Strickland, 466 U.S. at 688-89 (noting that a defendant must show that counsel's conduct fell outside the wide range of reasonable conduct in order to be considered constitutionally deficient). It would not be an abuse of discretion to deny a request for an evidentiary hearing on these allegations because, viewed against the record, the allegations do not state a claim for relief. See United States v. Leonti, 326 F.3d at 1116.

## C.    Failure to Hold a Competency Hearing

Movant claims that his actions in the courtroom should have been interpreted by the trial court as incompetence to stand trial and that the trial court's failure to evaluate his competence denied him a fair trial. (Mem. at 6-7, 24.) According to Movant, his actions at trial were the result of mental incompetence, rather than "the behavior of a haughty and insolent criminal." (Id. at 26.) The government argues that Movant understood the

1    proceedings and was competent to assist in his own defense.

2         To be competent to stand trial, a criminal defendant must have sufficient present

3    ability to consult with his or her lawyer with a reasonable degree of rational understanding

4    and have a rational as well as factual understanding of the proceedings.  Dusky v. United

5    States, 362 U.S. 402 (1960).  Whenever a judge possesses such genuine doubt, "[d]ue process

6    requires a trial court to hold a hearing, sua sponte, on a defendant's competence to plead

7    guilty."  Id. at 516.

8         There is no evidence in the record to support Movant's conclusory allegations that the

9    trial court's failure to hold a competency hearing fell below Constitutional guidelines.  Here

10   there was no "evidence of incompetence . . . such that a reasonable judge would be expected

11   to experience a genuine doubt respecting the defendant's competence."  Chavez v. United

12   States, 656 F.2d 512, 515 (9th Cir. 1981).  There are no facts before the Court that

13   substantiate Movant's claim that he fell "easily into states of depression" or was "suffering

14   from a delusional psychosis" during trial  (Mem. at 7, 13.)  In fact, there is no evidence such

15   as (1) a history of antisocial behavior and treatment for mental illness;  (2) an emotional

16   outburst in open court; (3) a previous psychiatric finding of insanity and/or the use of drugs;

17   or (4) the existence of psychiatric reports, which would suggest possible incompetence.

18   Review of the trial and sentencing proceedings demonstrate that Movant understood the

19   proceedings and that he had the ability to assist in his defense.  Movant's testimony during

20   the trial was lucid and coherent.  (Trial Tr., Vol. 3 at 312 - 337.)  Movant conversed with the

21   Court during sentencing and appropriately responded to the Court's questions.  (October 29,

22   2001, Sentencing Tr. at 11-12.)  As Movant noted, his statements may be read as showing

23   lucidity.  (Mem. at 28.)

24        **D.    Factors Considered for Purposes of Downward Departure**

25        Movant argues that he should have received a downward departure from the

26   sentencing judge and that his trial counsel was ineffective for not presenting evidence from

27   an expert in social issues to show Movant's isolation from his cultural support system.

28   "Taking into consideration Lopez' socio-cultural background and his learning and cognitive

1    shortcomings, these factors acquire a more meaningful character in the determination of the
2    applicability of a downward departure."  (Mem. at 33.)  Movant cites to <u>Koon v. United</u>
3    <u>States</u>, 518 U.S. 81 (1996), as authority for his position with reference to "isolation" as a
4    factor that should have been, but was not considered.  (<u>Id</u>. at 31.)

5        The government argues that Movant's position is inconsistent, in that Movant
6    described himself as a well-adjusted immigrant, yet asks for consideration based on isolation
7    from his homeland, Mexico.  The government further argues that during the 2001 sentencing,
8    the Court properly applied the United States Sentencing Guidelines 5H1.3.[5]

9        A district court may depart from the applicable Sentencing Guidelines range if "the
10   court finds that there exists an aggravating or mitigating circumstance of a kind, or to a
11   degree, not adequately taken into consideration by the Sentencing Commission in
12   formulating the guidelines that should result in a sentence different from that described."
13   <u>Koon</u>, 518 U.S. at 92.  Four types of factors are relevant to departures: forbidden factors;
14   encouraged factors; discouraged factors; and unmentioned factors.  <u>Id.</u> at 93-96. Forbidden
15   factors include race, sex, national origin, creed, religion, socioeconomic status, lack of
16   guidance as a youth, drug or alcohol dependence, and economic hardship.  <u>Id.</u>  With the
17   exception of the forbidden factors, the Commission "does not intend to limit the kinds of
18   factors, whether or not mentioned anywhere else in the guidelines, that could constitute
19   grounds for departure in an unusual case."  <u>Id.</u>  Encouraged factors are ones that "the
20   Commission has not been able to take into account fully in formulating the guidelines."  <u>Id.</u>
21   at 94.  Discouraged factors, on the other hand, are "not ordinarily relevant to the
22   determination of whether a sentence should be outside the applicable guideline range."  <u>Id.</u>
23   at 95.

24       In <u>Koon</u>,[6] the Supreme Court interpreted the previous version of § 3742(e) to require

---

[5]    Now limited on constitutional grounds, <u>U.S. v. Booker</u>, 543 U.S. 220 (2005).

[6]    Overruled in part by the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003, Pub.L. 108-21, § 401, 117 Stat. 650, 670 (2003).

1   that appellate courts afford "substantial deference" to a district court's decision to depart from

2   the guidelines. Id. at 98. This "substantial deference" meant that a district court's departure

3   decision was reviewed not *de novo,* but for abuse of discretion.  The amended statute now

4   requires *de novo* review in certain situations while continuing to require that appellate courts

5   "give due deference to the district court's application of the guidelines to the facts" in all

6   other situations.[7]

7        The Ninth Circuit has already rejected Movant's arguments regarding downward

8   departure, finding that, because Movant had failed to request a downward departure, he

9   waived any claim that the district court erred in failing to depart.  (Memorandum Opinion

10  No. 01-10701 at 2; Answer, Ex. B.)  The Court further held that Movant misconstrued the

11  district court's statements when he claimed that the district court stated it did not have

12  discretion to depart downward from the guideline range because Lopez was classified as a

13  career offender.  (Memorandum Opinion No. 01-10701 at 2.)

14       There has been no intervening change in the law or new evidence presented that

15  necessarily impacts the decision of the trial court or the appellate court.  Moreover, because

16  no downward departure was addressed to the district court at sentencing, either by counsel

17  or in the presentence report, it is pure speculation what if any downward departure the court

18  might have considered.  Even at this stage, Movant does not assert specific facts or explain

19  how his trial counsel should have used those facts to argue for or to support a downward

20  departure.   Finally, as noted by the government, Movant's unsupported allegation of

21  "isolation" based on his cultural upbringing, is inconsistent with his claim that he was

22  arrested because of jealousy due to his successful cultural assimilation.  As this claim for

23  relief has already been addressed, resolved, and upheld on appeal, it is recommended that the

24

25

26  [7]  "The court of appeals shall give due regard to the opportunity of the district court to judge the credibility
    of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous
27  and, except with respect to determinations under subsection (3)(A) or (3)(B), shall give due deference to the
    district court's application of the guidelines to the facts.  With respect to determinations under subsection
28  (3)(A) or (3)(B), the court of appeals shall review *de novo* the district court's application of the guidelines to
    the facts. 18 U.S.C. § 3742(e) (April 30, 2003).

1   district court find that the claim lacks merit.  See Dodd, 321 F.2d at 242.

2       **E.    Alleged Errors in Jury Instructions**

3       Alleged errors in jury instructions are reviewed for abuse of discretion.  United States

4   v. Townsend, 31 F.3d 262, 270 (5th Cir. 1994), cert.denied, 513 U.S. 1100 (1995).  A refusal

5   to give a requested instruction is reversible error only if the proposed instruction was (1)

6   substantively correct, (2) not substantively covered in the jury charge, and (3) concerned an

7   important issue in the trial, such that failure to give the requested instruction seriously

8   impaired the presentation of a defense.  Id.  A conviction will not be reversed unless the jury

9   instructions, when viewed in their entirety, failed to correctly state the law.  United States v.

10  Flores, 63 F.3d 1342, 1374 (5th Cir. 1995), cert.denied, 533 U.S. 924 (2001).  Thus, even if

11  a portion of the jury instructions is not technically perfect, the district court's instructions will

12  be affirmed on appeal if the charge in its entirety presents the jury with a reasonably accurate

13  picture of the law.  See id.

14      **1.    Jury Should Have Been Instructed on Possible Penalty**

15      Movant claims that the jury should have been instructed to consider the possible

16  sentence he faced during the course of deliberations.  (Mem. at 33.)  Movant's request for the

17  jury to consider his potential sentence was properly denied.  The Ninth Circuit Model Code

18  of Criminal Jury Instructions No. 7.4 requires that the jury not consider punishment in

19  reaching a verdict.  It may be assumed that the jury followed its instructions to apply the law

20  regardless of the consequences and not to consider or discuss punishment.  See Richardson

21  v. Marsh, 481 U.S. 200, 206 (1987).  Hence, there is no legal merit to this argument.

22      **2.    Jury Instruction on Conspiracy Amended the Indictment**

23      Movant's claims that the jury instructions constructively amended the indictment and

24  diluted the burden of proof are without merit.  As government correctly notes the aiding and

25  abetting allegations, 18 U.S.C. § 2,[8] were part of the indictment through the conspiracy

26

27  _____
    [8]   § 2. Principals

28  (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or

13

1   allegations.  Thus, Movant was on notice of the aiding and abetting allegations.

2          In determining whether a jury instruction impermissibly shifts the burden of proof to
3   the defendant, the threshold inquiry is whether the challenged portion of the instruction
4   creates a mandatory presumption or merely a permissive inference.  U.S. v. Myers, 972 F.2d
5   1566 (11th Cir. 1992), cert.denied, 507 U.S. 1017 (1993).  Even error may be harmless if
6   those events did not have a "substantial and injurious effect or influence in determining the
7   jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993).

8          Defendant fails to identify the jury instructions which he believes were confusing and
9   which may have shifted the burden of proof.  The Court's review of the jury instructions
10  show that the instructions conform to the law in the Ninth Circuit.  (Tr. 368-382.)  The jury
11  was clearly instructed on reasonable doubt, see Ninth Circuit Model Criminal Jury
12  Instructions No. 3.5.  There was no impermissible shift of the burden of proof in these jury
13  instructions and proper and timely notice of the charges was given.  Consequently, this claim
14  lacks merit.

15  **F.      Jury Not Presented with Evidence of Prior Convictions**

16         Movant alleges that the jury was required to make a specific finding regarding the
17  validity of Movant's prior convictions and that his sentence was ultimately enhanced beyond
18  the statutory minimum on the basis of insufficient evidence.  (Mem. at 40.)

19         Addressing this issue, the Ninth Circuit held:

20             Lopez also claims that the government failed to provide the
               district court with sufficient evidence that he had been convicted
21             of the necessary predicate offenses to establish that he qualified
               for career offender status under 4B1.1. The basis for the district
22             court's conclusion that Lopez should be treated as a career
               offender was the criminal history information contained in the
23             presentence report.  The presentence report stated that Lopez
               had two prior state felony convictions for controlled substance
24             offenses: possession of narcotic drugs for sale in 1998 and
               attempted possession of narcotic drugs for sale in 1996.

25

26  _____

    procures its commission, is punishable as a principal.

27
    (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an
28  offense against the United States, is punishable as a principal.

                                                14

> Because Lopez challenges only the sufficiency of the evidence, and not that his prior convictions were qualifying convictions, the district court did not err in relying on the presentence report to conclude that Lopez was a career offender.

(Ninth Circuit Memorandum Opinion, No. 01-10701 at 5.)

Contrary to Movant's contention, the United States Supreme Court decision in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004) does not apply here because <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) and <u>Almendarez-Torres v. United States</u>, 523 U.S. 224 (1998) are specifically preserved; a sentence enhancement based on a defendant's prior convictions need not be presented to a jury.  Further, the government did timely and properly notice and present evidence of prior convictions.[9]  (Doc. No. 59.)  Because this claim was previously resolved by the Ninth Circuit and the sentence in fact withstands <u>Blakely</u>, this court recommends that the district court conclude that this claim lacks merit.

**G.    Application of <u>Booker</u>**

The government asserts that <u>Booker</u> does not apply to Movant's sentence because all Movant's appellate rights have passed since May 2003 and all decisions are final.  The Court agrees.  The constitutional and remedial holdings of the <u>Booker</u> decision are applicable to all cases pending on direct review.  <u>United States  v. Villegas</u>, 404 F.3d 355 (5th Cir. 2005). <u>Booker</u> and its progeny are not applicable in this case because Movant's appellate review rights have been exhausted since 2003.

**RECOMMENDATION**

The Magistrate Judge recommends that the District Court find that the Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. No. 133) pursuant to 28 U.S.C. § 2255 is without merit and may be dismissed with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1)(C), any party may serve and file written objections within ten days of being served with a copy of the Report and Recommendation.  If objections are not timely filed, they may be deemed waived.  Future pleadings should contain

---

[9]    Notably, at sentencing, Movant told the district court that the presentence report had been read to him in Spanish and that there were no errors in connection with the prior convictions detailed in that report. (Sentencing Tr. at 10-11.)

15

1  the following action numbers:  **CR-01-0077-PHX-SRB/CV-04-876-PHX-SRB**.

2        The Clerk is directed to mail a copy of the Report and Recommendation to Petitioner

3  and counsel for Respondents.

4        **DATED** this 29th day of January, 2007.

_____

Jennifer C. Guerin
United States Magistrate Judge

16